Good morning and may it please the court, Eric Levin for Mr. Alake Ilegbameh. I'm going to endeavor to reserve two minutes for rebuttal. The district court below failed to make a sufficient inquiry prior to denying Mr. Ilegbameh's motion for new counsel. As a result, the court fundamentally misunderstood the nature of his complaint and the interests that were implicated by it. Mr. Ilegbameh had complained that the defense had not completed its defense investigation and had failed to contact several defense witnesses. He was concerned that he would not receive a fair trial without a complete investigation and asked for new counsel if there was something preventing his counsel from fulfilling their duty. The district court, however, denied the request based on its misunderstanding that the issue concerned a disagreement over trial strategy and therefore did not implicate his right to counsel. This Court held in United States v. MUSA that in adjudicating a motion for new counsel, the court must make an adequate inquiry to create a sufficient basis to make an informed decision. It follows that where the court misunderstood the nature of the application, it cannot make an informed decision, and that in MUSA this Court held was per se reversible error. Can you show us in the transcript where exactly this was? Because I have to say I've read the transcript, and the idea that he was really asking for new counsel or what exactly he was asking for is not entirely clear to me. Sure. And I think that with any time an individual who is not trained in the law is speaking on behalf of themselves, it's always possible that things will be less than clear. But it was clear to the district court. The district court began on Excerpt of Record 46 by saying Mr. Iligbame is requesting essentially a new lawyer. And at Excerpt of Record 81 to 82 the district court said your view is that it is not ready at this point to be presented to a jury on Tuesday, and therefore you would like to have a new counsel appointed. When Mr. Iligbame spoke at Excerpt of Record 91, he clarified that it was a conditional request, that the condition was that if there was something preventing his counsel from completing their lawful duty, and made it very clear that the first attorneys have not been able to contact some of the witnesses in this case. So it was clear that, and in denying the request, of course, the Court denied it both as a request for new counsel and as a request for a continuance. So I know that the government has said, well, he disavowed it. I don't think he disavowed it. What he did is he clarified that it was a conditional request for new counsel, that he was, the nut of his concern was that the investigation had not been completed. Counsel, I understand that he had written two letters to the court, and they're not part of the record, so we can't review what he actually said in his letters? That's correct. They were not docketed. I did reach out to the court. They weren't part of the docket. However, he does reiterate many of the points that the court identified were in the letters, and of course the court had the letters, and based on the court's review of those letters said, you're requesting a new attorney, and implicit in that is a continuance, or at least that was the court's opinion. So even though we lack those records, the colloquy and the court's understanding make it clear that it was a request for new counsel. And was the problem rooted in the fact that the U.S. was calling all the American spouses and all the immigrants were taking the fifth and not wishing to testify? Is that what the problem was? Well, as the trial, on the first day of trial, the defense counsel had indicated that he had contacted some, but not all, of the Nigerian, the foreign national spouses, and that they were not willing to testify. But even at the time of trial, it was clear that not all of them had been communicated with. The issue really was that they should have investigated whether or not the ultimate decision was going to be to call them? They should have, yes. I mean, the right to a complete investigation, counsel has a duty to fully investigate the case, and this was an allegation of a conspiracy, both with the U.S. citizen spouses and the foreign national spouses. And so they were key witnesses. They weren't floating out, orbiting this case. They were really at the heart of this case, and certainly finding out what they would have to say and whether it would be helpful is critical to his right to counsel. It seems to me you're really making an argument for ineffective assistance of counsel. There is an argument of ineffective assistance of counsel, and I recognize that's not generally something, and certainly on this record, that I would be able to press on direct appeal. And so what I'm saying is something slightly different, which is that the district court erred in resolving this issue because of the way it handled it, because it misunderstood the fundamental nature of the request. And had it done an adequate inquiry, had it really teased it apart and found out what was going on, it would have seen what is clear from the record, which is that this was about not trial strategy but trial preparation and investigation. Well, the main problem in the transcript is that your client said, finally, I did not say I need a change of attorney. That's right. And that's the part I was referring to earlier, which is what I read into that as he's making it conditional. He's saying that the first attorneys have not been able to contact some of the witnesses. We just found out on Friday that that was the case. And if there is something that is preventing them, then we will pick up. So it will continue from where Attorney Pedro Castillo and Lisa Chenard stop. This is, I'm sorry, Excerpt Director 93 to 94. If there are some factors or difficulty preventing my defense counsel to do their lawful duty for me to fully represent me in this case, so it will continue from where the defense counsel stops. You said they just learned that on Friday. When were the two letters sent? I believe the record indicates that the two letters were sent previous to it. So it may have been additional things in addition to the six points that he had outlined from his letters. He had sent two letters to the court, and I believe they predated that. And that can't be the basis of those two letters. Well, in the colloquy, he does identify several other issues that he has identified. I have not made that the focus of the inquiry of new counsel, because this issue, the issue of the complete investigation, is one that implicates the right to counsel. And I did not consider the others to be. But you know, the issue of... You said you wanted to save time. Yes, I do. You have two minutes. Thank you. Good morning, Your Honors. May it please the Court, Aaron Ketchel for the United States. In his appeal, defendant asserts claims that are simply factually unsupported in the record, and in one instance, attacks the introduction of evidence that he himself elicited during trial. Well, let me turn to the questions that the Court was asking my colleague regarding  And that is the prior question. The primary argument is that the Court denied a substitution counsel request made at the pretrial conference. What the record reflects, though, is that Judge Fitzgerald carefully considered the letters that defendant had sent. And Judge Wardlaw's question about the content of the letters, even though we don't have the letters in the record, what we do have is that following defendant's colloquy, Judge Fitzgerald said that the colloquy accurately summarized the content of the letters. Well, it does seem that defense counsel did not even talk to some of the alleged members of the conspiracy. That is true. Defense counsel did not talk to some of the alleged members of the conspiracy because they were difficult to find. The government equally had a hard time finding some of these witnesses. What the record does reflect, though Has there been documentary evidence that they would have submitted to the Yes. And at the point that that was a year, I think maybe a year and a half or so before, the government attempted to locate those witnesses and surely the defense counsel and their investigator tried to locate those witnesses. Those witnesses realized likely that their status in the United States was at risk once the United States had established that they were in a fraudulent marriage and fled. What defense counsel did do, however, was subpoena three of the immigration attorneys who were precipient witnesses and three of the Nigerian spouses who were involved in the conspiracy as well. All three immigration attorneys invoked their Fifth Amendment privilege before the court. And it is likely that all three of the Nigerian spouses had they been, what defense counsel ultimately said is that he elected, they elected not to call the Nigerian spouses as witnesses, likely because they realized that the Nigerian spouses would have been appointed to counsel and would have similarly invoked their Fifth Amendment privilege. To the extent they did not invoke the privilege and decided to testify, there was a good chance they would have lied on the stand. Just like one of the Nigerian spouses, Philip Afanichukwu, was caught on tape trying to convince his U.S. counterpart to lie to law enforcement. Where they, he said on the tape that they should conspire to say that they did not know someone named Terry, defendant's name, but instead knew someone named Jerry. And so that was the type of testimony that they would likely try to state on the record to protect themselves and to try and protect their status, which defense counsel at that point surely recognized would have been perjury. So the district court did consider the letters, did consider the basis, and conducted an inquiry. And as this court has pointed out in its questioning, the defendant himself stated unequivocally that I did not say I need a change of counsel. Given that the defendant himself said that he did not need a change of counsel, it is difficult to see how the district court could have abused its discretion in failing to grant relief that was never sought. This is a defendant, by the way, who demonstrated that when he wanted to substitute counsel, knew how to do it. Following his sentencing, he filed a request to substitute counsel, and the district court granted a request to substitute counsel, who subsequently then filed a motion for bond pending appeal. So the defendant was familiar with the process for seeking new counsel and deliberately did not seek new counsel at the time. The reason likely was because what Judge Fitzgerald observed was the defendant was represented by two seasoned public defenders who put on a forceful defense facing challenging facts. They filed pretrial motions. They subpoenaed potential defense witnesses. They forcefully cross-examined U.S. witnesses called by the government, including the U.S. spouses, attacking their credibility based on their prior perjury by filing the false fraudulent marriage documents, as well as some of them received use immunity for their testimony and cross-examined them on that basis as well. So Judge Fitzgerald knew that this case had been diligently defended, and defendants simply cannot show the third prong of the court's inquiry for substitution of counsel under the Mendez-Sanchez standard, which is that the defendant must establish that there was a complete breakdown of communication between defendant and his counsel that resulted in an inability to present a defense. In other words, there was an extensive irreconcilable conflict, and there is simply nothing in the record, nothing in the record that can establish that there was that type of conflict present. And defendant, in his reply on page 1, made clear that they are not pressing an effective assistance of counsel claim here, and therefore, it must fall into this – it's really trying to thread a needle where there is no hole, some need for further – a continuance for further investigation. But defense counsel told the court, defense counsel told the court that they were prepared to go forward and prepared to proceed, and at the point that defense counsel says that they are prepared to proceed, the Supreme Court in Morris v. Continuance. Unless the court has any further questions, I'm prepared to submit. Well, why wasn't the evidence of the two Carter marriages cumulative and unduly prejudicial? Well, Your Honor, let me first say – talk about the cumulative point. It wasn't cumulative because they – they talked about their relationship directly with the defendant as opposed to Craven-Charles. Craven-Charles was a key part of the defense case here. Craven-Charles was affiliated with five of the six U.S. spouses who were participants in the – in the fraudulent scheme. And what the defense reiterated at opening throughout the case and at closing was that the real person, the real target here should have been Craven-Charles, and the defendant was a naive matchmaker who simply wanted to connect people for true love. What both the Carters testified to is that they were directly approached by defendant. With – with respect to the first Carter, Hakeem Carter, he was approached outside a store, kind of cold-stopped by the defendant, and asked would he like to enter into marriage for money. So those were critical witnesses for the government to establish that this was not a Craven-Charles operation. The defendant was the mastermind. With respect to how the question about its undue prejudice, defendant has really, in his papers, not articulated how this is unfairly prejudicial. Surely – surely it is prejudicial in that it is probative and inculpatory. But for the court to find that it's unfairly prejudicial, under the Balyuk case, and I apologize if I'm mispronouncing it, the court has said that unfair emotional response from the jury that adversely affects the jury's attitude of defendant wholly a part of its judgment of defendant's guilt or innocence. There is nothing here to suggest that there's anything in the Carters' testimony that would have evoked an emotional response separate and apart from the probative nature of their testimony. And therefore, there is no basis to find that it was unfairly prejudicial. Well, even if the Carter marriages were not unfairly – because of the component having to do with Charles, what about the third sham marriage and the solicitation of prostitution? So the two other – so the Michael Monecki testimony, that was testimony that I referred to earlier, solicited by the defendant in his own examination. Under the invited error doctrine, the court should not hold the government accountable for that elicitation.  which was that Michael Monecki had paid the defendant money to be a beneficiary who was a Nigerian who was a beneficiary of a sham marriage. So that is also squarely 404B evidence, to the extent that the court even wants to get to that inquiry, because it showed that the defendant had accepted money from a Nigerian spouse. That is probative because one of the defense attacks was that the government did not talk to Nigerian spouses, primarily because the government could not locate or they were uncooperative Nigerian spouses. And it also went to the fact that the defendant himself received money, which they attacked repeatedly, including during closing, saying that there was no evidence that the defendant himself had received money from the scheme. With respect to the testimony from Chanel Gates regarding the defendant propositioning her, we point out that this is actually not falling under the 404B rubric, because it was a prior admission – or excuse me, it was a statement by the defendant. A statement by a defendant is not considered 404B evidence under BIBO-Rodriguez, and therefore the court need not consider whether it falls within a 404B standard. If the court were to reach a 404B question as to that evidence, we would continue to say that it's inextricably intertwined. What the defendant's defense was, was that, again, he was a matchmaker putting people together for true love. That is simply inconsistent with him later propositioning one of the two spouses that he introduced for true love for sex. That does not indicate that there was any – that further corroborates the government's evidence that he was not in this for true love, but instead saw this as a business opportunity and sought to capitalize it as a commercial transaction and immigration fraud. And for those reasons, we don't believe that either of those additional points the defendant makes under 404B actually constitute unfair prejudice. I see my time is now out. Thank you, Kevin. Just briefly returning to the issue of whether or not he had actually asked for new counsel, I would point out that after that colloquy, where I believe what he's doing is offering a conditional request for new counsel, the court at Excerpt to Record 95 says, well, you know, one view of all this is that you're asking for new counsel and a continuance, and I'm going to deny those motions. So at the end of – it's not as though something happened that the court was unaware of. The court was engaged and understood it to be a request for a continuance and new counsel. Briefly, just the Chanel Gates issue, the notion that anything that a defendant says is an admission as opposed to 404B seems to swallow the 404B rule entirely. And, in fact, if you look at the cases that the government's citing, BIBA – and I'm blanking on the other last name – it concerned a statement to a law – essentially an admission to a law enforcement officer post-arrest, which is very different than interactions between two civilians and a proposition for essentially prostitution, which is a crime under California law. And we haven't talked much about this, but the issue, as the government pointed out, Craven Charles was connected to five of the six U.S. spouses. That's something that the government referred to in their summation as well, and I think it bears directly on the issue of the appropriate guidelines, if we understand the alternate guidelines here to relate to whether you are the U.S. citizen or the immigrant applicant. There was another individual, Craven Charles, who was charged, and the government relied on the fact that he was connected to the U.S. spouses. My point being that my client was more connected to the immigrant community, and therefore the other guideline would have been more appropriate to sentence him under. Thank you, Captain. Thank you.
judges: Reinhardt, Wardlaw, Owens